UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ELSA CABALLERO,

       Plaintiff,

       v.                                  CASE NO. 5:18-CV-207-Oc-MAP

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

_____/

## ORDER

This is an action for review of the administrative denial of disability insurance benefits (DIB) and period of disability benefits. *See* 42 U.S.C. § 405(g). Plaintiff argues the agency's decision is not supported by substantial evidence because the Administrative Law Judge (ALJ) improperly discredited her subjective complaints of pain associated with carpal tunnel syndrome (CTS) and fibromyalgia and formulated a faulty residual functional capacity (RFC) assessment. After considering the parties' briefs (docs. 30, 32) and the administrative record (doc. 16), I find the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence. I affirm.[1]

*A.    Background*

Plaintiff Elsa Caballero was born on October 20, 1970, and was 44 years old on her alleged disability onset date of December 4, 2014. Plaintiff graduated high school and completed two semesters of college. For the fifteen years leading to her onset date, Plaintiff was a personal banker at Bank of America in Ocala, Florida, opening accounts, performing general customer service, and selling the bank's financial products.

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

Plaintiff had left side carpal tunnel surgery in October 2014. After surgery, she took only one week off of work, despite her doctor's advice to spend more time recuperating. She overworked her left wrist, and it never healed properly. Plaintiff was struggling to complete her job duties and was in so much pain she quit in December 2014. She testified she has 10% functioning in her left wrist and hand and that surgery has made her worse off: she relies on her right hand for almost everything, so her CTS on that side has worsened. She drops things constantly, she has very little hand or wrist strength on either side, she cannot type or write, and her fingers alternate between painful and numb.

She has not consulted a hand surgeon about her right-side CTS, because after her left-side CTS surgery failed, she did not want to risk losing additional functioning in her right hand if the surgery failed again. Plaintiff also suffers from fibromyalgia, depression, and anxiety, and she experiences tension headaches five days a week. Side effects from her pain medications leave her groggy. She naps often and does not feel safe driving. Once an avid gardener, she can no longer work in her yard. She testified she lacks motivation, she does not cook or clean for herself, and she does not invite her daughter and grandkids to visit anymore.

Plaintiff initially alleged disability due to carpal tunnel, back pain, and depression. (R. 69) After a hearing, the ALJ found that Plaintiff suffers from a longer list of severe impairments: "disorders of back, fibromyalgia, bilateral carpal tunnel syndrome with status post left side release hyperlipidemia, hypothyroidism, migraines, right shoulder pain, depression and anxiety." (R. 14-15) But the ALJ determined that Plaintiff is not disabled as she retains the RFC to perform light work with limitations:

> The claimant can sit, stand and walk six hours in an eight-hour workday, and lift/carry 20 pounds occasionally and 10 pounds frequently. The claimant would

require work, which is, at most, very low semi-skilled in nature, which are tasks performed so frequently as to be considered routine, even though the tasks themselves might not be considered simple. The claimant should avoid frequent pushing and pulling motions with her upper extremities (hand controls) within the aforementioned weight restrictions. The claimant can perform frequent fine manipulation with fingering with both hands. Due to mild to moderate pain and medication side effects, the claimant should avoid hazards in the workplace such as unprotected areas of moving machinery; heights, ramps; ladders; scaffolding; and on the ground, unprotected areas of moving machinery; heights; ramps; ladders; scaffolding; and on the ground, unprotected areas of holes and pits. The claimant could perform each of the following postural activities occasionally: balancing, stooping, crouching, kneeling and crawling, but not the climbing of ropes or scaffolds and of ladders exceeding 6 feet and she is limited to no more than occasional overhead reaching and frequent reaching front and/or laterally with her left upper extremity. The claimant has non-exertional mental limitations which frequently affects her ability to concentrate upon complex or detailed tasks, but would remain capable of understanding, remembering and carrying out job instructions as defined earlier; making work related judgments and decisions; responding appropriately to supervision, co-workers and work situations; and dealing with changes in a routine work setting.

(R. 17) The ALJ found that, with this RFC, Plaintiff could not perform her past relevant work but could work as an usher, a furniture rental consultant, and a sales attendant. (R. 26) The Appeals Council denied review. Plaintiff, her administrative remedies exhausted, filed this action.

### B.      *Standard of Review*

To qualify for DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

3

The Social Security Administration has promulgated regulations that establish a "sequential evaluation process" to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to

provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

### C.    Discussion

#### 1.    *Subjective complaints of pain*

Plaintiff argues the ALJ's boilerplate credibility finding is inadequate, because the ALJ supports it with parsed statements that Plaintiff's pain is under control.  The Commissioner responds that substantial evidence supports the ALJ's finding that Plaintiff's subjective complaints are inconsistent with the record.  I agree with the Commissioner.

The evaluation of a claimant's subjective symptoms is governed by the "pain standard." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Under this standard, the claimant must show: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined medical condition is of such severity that it can be reasonable expected to give rise to the alleged pain." *Id*. (*quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  Where a claimant satisfies the pain standard, the ALJ then assesses the intensity and persistence of the symptoms to determine how they limit the claimant's capacity for work.  20 C.F.R. § 404. 1529(c).  Considerations relevant to this evaluation include: the objective medical evidence; evidence of factors that precipitate or aggravate the claimant's symptoms, medications and treatments available to alleviate these symptoms; the type, dosage, effectiveness, and side effects of such medications and treatments; how the symptoms affect the claimant's daily activities; and the claimant's past work history.  *Id*.  "If the ALJ decides not to credit a claimant's testimony about her symptoms, the ALJ must 'articulate explicit and adequate reasons for doing so.'" *McMahon v.*

*Comm'r of Soc. Sec. Admin.*, 583 F. App'x 886, 893 (11th Cir. 2014) (*quoting Foote v. Chater*, 67

F.3d 1553, 1561 (11th Cir. 1995)).

The Eleventh Circuit does not require that an ALJ summarize the entire record in his

decision or "cite particular phrases or formulations" in assessing credibility.[2]  *Dyer*, 395 F.3d at

1210-11.  In fact, "there is no rigid requirement that the ALJ specifically refer to every piece of

evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not

enough to enable [the district court] to conclude that [the ALJ] considered her medical condition

as a whole."  *Id*. at 1211 (internal quotations omitted).  Thus, if an ALJ provides a clearly

articulated credibility finding supported by substantial evidence, the finding will not be disturbed

on appeal.  *Foote*, 67 F.3d at 1562.

Here, the ALJ has done so.  In addressing Plaintiff's testimony and complaints, the ALJ

wrote:

> In reaching the conclusion about the claimant's residual functional capacity, the
> Administrative Law Judge considered the effects of the claimant's alleged
> symptoms in accordance with the criteria set forth in the Regulations (20 C.F.R.
> 404.1529, 416.929, and Social Security Ruling 96-4p).  The claimant has an
> impairment that is reasonably expected to produce the type of symptoms she
> alleges, but her complaints suggest a greater severity of impairment that can be
> shown by the objective medical evidence alone.

(R. 22-23)  The ALJ emphasized Plaintiff's reports that medication helped control her pain, her

migraines had improved, and her CTS responded to topical creams and splints.  (R. 23)

Discounting Plaintiff's complaints of fibromyalgia pain, the ALJ pointed out "there is no imaging

of her extremities or her back since her alleged onset date," medications and massage therapy

---

[2]  The SSA no longer uses the term "credibility" when assessing if a claimant's subjective
complaints are consistent with and supported by the record.  Because the parties employ this term
in their briefs, however, I utilize it here for consistency and ease of reference.

improved her pain and her ability to complete activities of daily living, her motor strength was intact, and she had a full range of motion in her joints. (R. 24)

Plaintiff's medical history offers context for these findings. In July 2014, Plaintiff went to the emergency room with left wrist pain radiating up her arm, numbness in her wrist and arm, neck pain, and a limited range of motion in her hand and back. Doctors diagnosed acute CTS, fitted Plaintiff with a brace, and prescribed Percocet. She was discharged the same day, feeling better. (R. 310) Later that month, she had her first appointment with orthopedist Zakariah Mahmood, M.D., who noted her bilateral hand numbness and tingling, worse on the left side. Dr. Mahmood noted probable CTS but awaited the results of nerve conduction studies (NCS) and an electromyogram report (EMR) before making a diagnosis. (R. 321-22) meanwhile, Dr. Mahmood gave her injections in both wrists to ease her pain.

Plaintiff returned to Dr. Mahmood in September 2014, and reported that the injections helped for about a week but since then she had not been sleeping well. (R. 320) In Dr. Mahmood's opinion, Plaintiff was a candidate for bilateral CTS surgery (starting with her left wrist), as more conservative treatment had failed; Plaintiff had left endoscopic carpal tunnel release surgery the next month. (R. 323) At her follow-up appointment, Plaintiff reported pain at her incision site, but overall, she was "very happy" with the results. (R. 318) The numbness and tingling in her fingers improved, then disappeared. (R. 318-19)

Plaintiff's primary care doctor, James Lemire, M.D., treated her from March 2014, through March 2018. Plaintiff had monthly appointments with Dr. Lemire. His records include a review of systems, a list of Plaintiff's diagnoses, and a prescription for medical massage treatments. Between appointments with Dr. Lemire, a therapist in his office gave Plaintiff weekly massages

that decreased her pain, increased her range of motion, and helped with her activities of daily living. For example, in August 2015, Plaintiff told Dr. Lemire that regular massages improved her back pain more than chiropractic adjustments. (R. 486) In November 2015, Dr. Lemire observed that "medical massage helps to improve [Plaintiff's] mobility and function of both hands and wrists tremendously as well as back and shoulder mobility." (R. 517) Plaintiff told Dr. Lemire that "massage is the only treatment that helps her condition" (April 2016) (R. 526), and it "really helps to reduce my pain and helps me function better" (October 2017). (R. 554)

Dr. Lemire did not recommend more aggressive treatments than massage, instead referring Plaintiff over time to a hand specialist, a neurologist, a psychiatrist, and a rheumatologist. In December 2014 – about a week after Plaintiff's alleged onset date – Plaintiff met with Dr. Lemire "to discuss possibility of leave of absence from work." (R. 365) After a normal review of systems (Plaintiff reported no headaches, no muscle weakness, no joint pain, stiffness, tenderness, or swelling; she had normal muscle tone and full range of motion), Dr. Lemire assessed Plaintiff with CTS, fibromyalgia, chronic fatigue syndrome, insomnia, depression, hormone disturbance, fatigue, malaise, and a high BMI. (R. 366) Dr. Lemire wrote:

> Need absolute rest; follow with Psychiatry per routine; will monitor hormone stabilization; most importantly, after review of the charts of the last six months combining 1) the need for ongoing massage therapy with only temporary benefit, 2) the continued deterioration of fatigue, and 3) the presence of very high titers of combined Cytomegalovirus and Epstein Barr viruses, it is evidence this patient has a severe and worsening Fibromyalgia Syndrome and Chronic Fatigue Syndrome as characterized by pain and depression with underlying fatigue.

(R. 366) He recommended Plaintiff take a three-month medical leave of absence from work. Dr. Lemire did not order or review x-rays, lab work, or other studies. At a follow-up appointment in January 2015, Plaintiff reported shoulder pain that extended down her right side and the middle of

her back, CTS in both hands (but "left is less numb and the pain is much less"), and fatigue. (R. 357)  Dr. Lemire continued prescribing massages, which Plaintiff said decreased her pain and increased her range of motion.

In June 2015, Plaintiff consulted neurologist Lance Kim, M.D. at Dr. Lemire's referral regarding her right arm and neck pain.  Dr. Kim conducted NCS and an EMR, finding "moderate right median compression neuropathy at the wrist." (R. 468)  Dr. Kim urged Plaintiff to consult a hand surgeon about operating on her right-side CTS, but Plaintiff was reluctant to do so (and never did). (*See* R. 492)  Instead, Plaintiff continued with regular massage treatments as prescribed by Dr. Lemire.

Plaintiff also saw Pamela Carroll, a nurse practitioner at Oakbrook Psychiatry in Ocala, for eight sessions beginning in March 2012, and continuing until May 2015. (R. 438-56)  In February 2013, Plaintiff told Ms. Carroll about her pending divorce and her husband who had complained to her boss, who in turn investigated her workplace activities. (R. 450)  She later relayed that her husband "took everything" in the divorce, including their house. (R. 448)  In January 2015, shortly after her onset date, Plaintiff said she visited her sister in New York for the holidays and was growing increasingly anxious about returning to work after her medical leave (Dr. Lemire had authorized three months of medical leave in December 2014). (R. 365, 446)  She reiterated these concerns the next month and described "feeling overwhelmed" and "paralyzed" with anxiety about returning to work. (R. 444)  She had monthly appointments in March, April, and May 2015, during which she talked about feeling old and useless (R. 440), she appeared "glum" (R. 438), and she was frustrated about the throbbing pain in her left side following surgery. (R. 442)  Ms. Carroll prescribed Lexapro, Trazadone, and Wellbutrin for Plaintiff's depression and anxiety. (R. 438)

9

Next, Plaintiff treated with a rheumatologist in January 2016 (over a year after Dr. Lemire first diagnosed fibromyalgia (R. 366)). John Gresh, M.D. and Rebecca Long, A.R.N.P., of the Arthritis and Osteoporosis Care Center in Ocala, treated Plaintiff at least five times between January 2016, and September 2017. In January 2016, her lab results were within normal range. (R. 570-71) Dr. Gresh prescribed cyclobenzaprine as a muscle relaxer; duloxetine (Cymbalta) for anxiety, depression, and fibromyalgia pain; and a topical solution for her CTS and joint pain. (R. 558) In May 2017, Plaintiff described her pain as aching, stabbing, and burning, and Ms. Long talked with Plaintiff about the importance of physical exercise in combating fibromyalgia symptoms. (R. 558) At Plaintiff's last appointment of record with Dr. Gresh in September 2017, Plaintiff said the muscle relaxer helps her sleep, but she had not been taking Cymbalta (for fibromyalgia pain and depression) consistently. Her sister had passed away a few months earlier, leaving Plaintiff unmotivated and depressed. "She continues to have chronic pain in her right shoulder, without injury or trauma. Films were ordered at her last visit but she has failed to have them done. Her carpal tunnel symptoms continue but do respond to pennsaid 2% topical solution and splints." (R. 575) She had intact range of motion in her bilateral elbows, wrists, knees, and ankles. (R. 576) Her right shoulder's range of motion was limited to 100 degrees, but her left shoulder was normal. Next to "fibromyalgia zones," Dr. Gresh wrote "moderate tenderness diffusely." (*Id*.)

First, within her argument challenging the ALJ's credibility finding, Plaintiff objects to the ALJ's consideration of her fibromyalgia. It is not clear if she is making a step two or a step five argument. As defined by the American College of Rheumatology, "[f]ibromyalgia is a clinical syndrome defined by chronic widespread muscular pain, fatigue, and tenderness. . . .

Unfortunately, there are no 'objective markers' – evidence on X-rays, blood tests or muscle biopsies for this condition, so patients have to be diagnosed based on the symptoms they are experiencing."   *See*   https://www.rheumatology.org/I-Am-A/Patient-Caregiver/Diseases-Conditions/Fibromyalgia.

The Social Security Administration has promulgated Social Security Ruling 12-2p, instructing that subjective complaints are the "essential diagnostic tool" for fibromyalgia and that physical examination will usually yield normal results – a full range of motion, no joint swelling, and normal muscle strength and neurological reactions.  SSR 12-2p, 2012 WL 3104869 (July 25, 2012).  The ruling directs ALJs to consider fibromyalgia in the five-step sequential evaluation process and instructs them on how to develop evidence and assess the impairment in determining if it is disabling.  To establish the medically determinable impairment of fibromyalgia, a claimant must have a diagnosis from an acceptable medical source that meets all these criteria:

A history of widespread pain that has persisted more than three months;

At least 11 positive trigger points found bilaterally both above and below the waist on proper physical examination or repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and

Evidence that other disorders that could have caused these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded.

*See* SSR 12-2p, 2012 WL 3104869, at * 2-3 (July 25, 2012).

If Plaintiff is making a step two argument, it fails.  The ALJ considered Plaintiff's fibromyalgia and determined it to be severe.  Step two requires only that the ALJ determine whether Plaintiff suffers from at least one severe impairment.  *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (holding "the finding of any severe impairment . . . whether or not it

results from a single severe impairment or a combination of impairments that together qualify as severe" is enough to satisfy step two).  The ALJ satisfied this requirement.

If Plaintiff is arguing that the ALJ erred in discrediting her pain complaints and finding at step five she can perform work in the national economy, this too fails.  To be sure, Plaintiff's pain persisted despite her medication.  And sometimes pain can be disabling, even if not supported by objective medical evidence.  *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).  A diagnosis of fibromyalgia, however, does not necessarily equate to work-related limitations.  *See* 42 U.S.C. §423(d)(1)(A) ("The term 'disability' means inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment"); *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) ("[d]isability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself"); *Moore, supra* 405 F.3d at 1213, n.6.

Here, the ALJ expressly considered SSR 12-2p in addressing Plaintiff's fibromyalgia complaints. (R. 24)  Although Plaintiff testified that her fibromyalgia causes diffuse and chronic pain, Dr. Lemire made no specific findings in his treatment records about trigger points or the impairment's limiting effects.  Plaintiff's rheumatologist did not discuss trigger points, either.  Interestingly, the lengthiest treatment record from her rheumatologist's office is a printout of Plaintiff's appointment dates, her diagnoses (fibromyalgia, CTS, depression) and corresponding insurance codes, and the provider's name (Dr. Gresh) with no substantive information. (R. 561-72)  On a more detailed treatment record, Dr. Gresh described Plaintiff's fibromyalgia symptoms as moderate, noted her improvement on medication (despite not taking it consistently), and urged Plaintiff to exercise a few times every week.  (R. 574-77)  And Plaintiff's initial DIB application

did not list fibromyalgia as a basis for her disability. On this record, the ALJ did not err in considering Plaintiff's fibromyalgia, either at step two of the sequential evaluation process or in fashioning her RFC for limited light work.

Plaintiff argues the ALJ parsed statements from her medical records that otherwise do not support his credibility finding regarding her CTS, fibromyalgia, and headaches. I disagree. The ALJ found these impairments are severe, which means they limit Plaintiff's ability to perform basic work activities. (R. 13) The ALJ accounted for this in restricting Plaintiff to a limited range of light work. Plaintiff's medical records show conservative treatment from her primary care doctor. Dr. Lemire's recommended treatment was weekly massage, which Plaintiff said helped alleviate her pain, albeit temporarily. Although Plaintiff consulted a neurologist, it was not for headaches but for her CTS symptoms and shoulder pain. As summarized above, Plaintiff's musculoskeletal exam findings showed normal muscle strength, intact range of motion, and no joint swelling or tenderness. She said massage helped her mobility "tremendously" in her wrists, back, and shoulder. (R. 516) Plaintiff did not consult a hand specialist, despite recommendations she do so to address her right-side CTS symptoms, and she said her CTS symptoms are helped by splints and topical creams. On this record, I find substantial evidence supports the ALJ's credibility findings.

### 2. RFC

Next, according to Plaintiff, "the ALJ's failure to properly consider Ms. Caballero's subjective complaints rendered his RFC and hypothetical to the VE unsupported by substantial evidence. In particular, the ALJ's failure to consider Ms. Caballero's depression, anxiety,

Fibromyalgia and limitations of her hands due to bilateral carpal tunnel syndrome was error." (doc. 30 at 20). The Commissioner claims substantial evidence supports the ALJ's RFC. I agree.

A claimant's RFC is the most work she can do despite any limitations caused by her impairments. 20 C.F.R. § 404.1545(a)(1). In formulating a claimant's RFC, the ALJ must consider all impairments and the extent to which these impairments are consistent with medical evidence. 20 C.F.R. § 416.1545(a)(2), (e). This includes both severe and non-severe impairments, and the ALJ must then determine if the claimant can "meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 416.1545(a)(4). An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence. *McCruter v. Bowen,* 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; accordingly, ALJ cannot point to evidence that supports the decision but disregard other contrary evidence). Under the statutory and regulatory scheme, a claimant's RFC is a formulation reserved for the ALJ, who must support his findings with substantial evidence. *See* 20 C.F.R. § 404.1546(c).

Plaintiff's contention that the ALJ did not account for her depression and anxiety is without merit. In his RFC assessment, the ALJ identified "non-exertional mental limitations which frequently affect her ability to concentrate upon complex or detailed tasks, but [Plaintiff] would remain capable of understanding, remembering and carrying out job instructions as defined earlier; making work related judgments and decisions; responding appropriately to supervision, co-workers and work situations; and dealing with changes in a routine work setting." (R. 17) The ALJ found Plaintiff suffers from severe depression and anxiety and considered her treatment between March 2012, and May 2015, at Oakbrook Psychiatry, devoting a page of his discussion

to Plaintiff's mental health symptoms. (R. 19)  Plaintiff does not point to any records discussing

mental health limitations beyond those identified by the ALJ.

Next, Plaintiff challenges the ALJ's RFC finding that she can perform fine manipulation

tasks with both hands frequently and can frequently lift and carry up to 10 pounds. (R. 17)  Citing

her testimony that her left hand is reduced to only 10% usefulness, Plaintiff argues she "would be

able to use her hands to handle, grasp, and finger on an occasional basis at most." (doc. 30 at 20).

But as discussed in the first section of this Order, the ALJ properly discredited Plaintiff's subjective

symptoms as inconsistent with the medical record.  And none of Plaintiff's treating sources opined

that Plaintiff's ability to perform fine manipulation tasks is more limited than the ALJ's RFC.

Plaintiff's second argument fails.

D.      *Conclusion*

For the reasons stated above, it is ORDERED:

(1) The ALJ's decision is AFFIRMED; and

(2) The Clerk of Court is directed to enter judgment for the Commissioner and close

the case.

DONE and ORDERED in Tampa, Florida on April 9, 2020.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE